**No. 26-2638**

# In the United States Court of Appeals for the Ninth Circuit

IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION

KIMBERLEY WOODRUFF; et al.,

*Plaintiffs-Appellants*,

v.

GOOGLE LLC,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Northern District of California
Case No. 4:21-cv-02155-YGR (The Hon. Yvonne Gonzalez Rogers)

## PLAINTIFFS-APPELLANTS' EXCERPTS OF RECORD VOLUME I OF VII

ELIZABETH C. PRITZKER
JONATHAN K. LEVINE
PRITZKER LEVINE LLP
1900 Powell Street, Suite 450
Emeryville, CA 94602
(415) 692-0772

MATTHEW W.H. WESSLER
ALISA C. PHILO
GUPTA WESSLER LLP
1400 16th Street NW, Suite 225
Washington, DC 20036
(202) 888-1741
*matthew@guptawessler.com*

October 28, 2026

*Counsel for Plaintiffs-Appellants*

*(Additional counsel listed on inside cover)*

FRANCIS A. BOTTINI, JR.
BOTTINI & BOTTINI, INC.
7817 Ivanhoe Avenue, Suite 102
La Jolla, CA 92037
(858) 914-2001

THIEN AN VINH TRUONG
SIMMONS HANLY CONROY, LLC
112 Madison Avenue, 7th Floor
New York, NY 10016
(212) 784-6276

DAVID A. STRAITE
DICELLO LEVITT LLP
485 Lexington Avenue, Suite 1001
New York, NY 10017
(646) 993-1000

LESLEY WEAVER
ANNE K. DAVIS
STRANCH, JENNINGS & GARVEY, PLLC
1111 Broadway, Suite 03-130
Oakland, CA 94607
(341) 217-0550

BRIAN DANITZ
NANCI NISHIMURA
COTCHETT PITRE & MCCARTHY LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
(650) 697-6000

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE GOOGLE RTB CONSUMER PRIVACY LITIGATION** | Case No. 4:21-cv-02155-YGR<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**<br><br>**GRANTING IN PART MOTION FOR ATTORNEYS' FEES;**<br><br>**GRANTING SEALING REQUESTS; AND**<br><br>**JUDGMENT**<br><br>Dkt. Nos. 777, 778, 781, 787, 793, 794, 795 |

Before the Court are plaintiffs' motions for final approval of the class action settlement (Dkt. No. 777 ["Approval Mtn."]) and for attorneys' fees and expenses (Dkt. No. 781 ["Fee Mtn."]).[1] The Court held a hearing and took arguments from the parties on February 17, 2026 (the "settlement hearing").

Having considered the motion briefing, the terms of the Settlement Agreement, and the arguments of counsel, the Court **GRANTS** the motion for final approval. The Court finds the settlement fair, adequate, and reasonable.

The Motion for Attorneys' Fees and Expenses is **GRANTED IN PART**. Given the plaintiffs' limited success, the Court **ORDERS** that class counsel shall be paid $21,856,239.22 in attorneys' fees and $3,488,792.96 in litigation costs.

[1] The parties also filed an omnibus sealing stipulation for each motion. Dkt. Nos. 794, 795; *see also* Dkt. Nos. 778, 787,793. The parties' sealing requests, which are undisputed, are **GRANTED**.

United States District Court
Northern District of California

# I. BACKGROUND

## A. PROCEDURAL HISTORY

Plaintiffs filed the operative putative class action complaint on August 27, 2021 (Dkt. No. 80) and filed a motion to certify a class on July 14, 2023 (Dkt. No. 546). The Court denied without prejudice the class certification motion. (Dkt. No. 690.)

The parties reached a settlement prior to the renewed motion for class certification due on September 2, 2025. On the same day, class counsel filed the present motion for final approval of the settlement.

## B. TERMS OF THE SETTLEMENT AGREEMENT

Under the terms of the Settlement Agreement, defendant has agreed to create a new user control (the "RTB Control") that gives class members the option to limit the information Google shares about them in Google's RTB auctions; notify by email all currently active individual Google U.S. account holders of the new RTB Control and the options available to control the information provided to third parties through RTB; and create a dedicated webpage describing the RTB Control. (Dkt. No. 778-4 ["SA"].) Per the Settlement Agreement, Google will launch the new RTB Control, publish all new disclosures, and transmit the public outreach email called for in the settlement within 30 days of this Court's Final Approval of the Settlement.

### 1. Class Definition

The Settlement Agreement defines the class as "all individual Google account holders subject to a Google U.S. Terms of Service who have an active Google account on the Effective Date. For the purposes of this settlement, a Google account is 'active' if it has been used within the two years preceding the Effective Date." (SA at 4.)

### 2. Class Benefit: Injunctive Relief

The injunctive relief described in the settlement would provide "all class members [with] access to information in Google's own disclosures about how the RTB auctions work, and what information about them is being shared and sold in the auctions and generally to whom, as well as a tool that empowers them to limit the sharing of their personal information in those auctions."

Specifically, the injunctive relief encompasses the following:

*First*, "Google will provide all Settlement Class Members with the ability to limit the information Google provides to third parties about them in the Google RTB system. Google will provide this ability through a new user control (the "RTB Control") that will be available to users at the account and browser levels, and that will allow all Settlement Class Members to elect a privacy treatment that limits the information that Google provides third parties about them in the Google RTB system." (SA at 5.)

*Second*, Google will disclose RTB-related information to the class members via (a) a new, dedicated webpage maintained by Google describing the new RTB Control, with appropriate links to other relevant Google webpages and the new RTB Control; and (b) an email[2] that will be sent to the class members that will advise recipients of the webpage referenced above. (SA at 6.)

**3. The Release**

The Settlement Agreement releases "any and all claims, known or unknown, pursuant to any theory of liability that are based on, or arise from, one or more of the same factual predicates or theories of liability asserted in the Complaint on behalf of the Settlement Class for injunctive, declaratory, or any other equitable non-monetary relief." (SA.) Importantly, it does not release any claims, for class members other than the named plaintiffs, "for monetary relief of any kind, including but not limited to any claims for statutory penalties, damages, unjust enrichment, disgorgement, restitution, punitive damages, or any other monetary claim, including the claims within the scope of the Rule 23(b)(3) class for which Plaintiffs sought and were denied certification." (SA, 2 ¶ 13.)

**4. Attorneys' Fees and Costs**

Plaintiffs' counsel seek $128,358,352 in attorneys' fees (approximately 3.5 times the proposed lodestar of $36,673,815) and $3,488,792.96 in costs. (Fee Mtn.) The common settlement fund also includes a provision to pay each plaintiff a service award of $15,000. (SA ¶ B.1.)

---

[2] As of the February 17, 2026 settlement hearing, the parties had not yet finalized language for this email.

**5. Class Relief**

This settlement is for injunctive relief only and it does not release any class members' right to monetary damages other than the Class Representatives. (SA, 2 ¶ 14.)

**C. Class Notice**

Because this settlement involves class member claims to be certified solely under Rule 23(b)(2), with no release of any class members' claims for monetary relief, class members do not have the right to opt out from an injunctive relief settlement, and class notice is not necessary. *Moore v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 2024 WL 4868182, at *4 (N.D. Cal. Oct. 3, 2024); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action.").

## II. FINAL APPROVAL OF SETTLEMENT

**A. Legal Standard**

Courts may approve a proposed class action settlement of a certified class only "after a hearing and on finding that it is fair, reasonable, and adequate," and that it meets the requirements for class certification. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, a court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiffs' fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Injunctive relief is considered "illusory if it does not obligate [a defendant] to do anything it was not already doing, or if it merely requires a defendant to continue practices it voluntarily adopted before the settlement." *In re Google Inc. Street View Electronic Communications Litigation*, 21 F.4th 1102 (2021) (internal quotations omitted). However, where a settlement does not release the class members' damages claims, the class does "not need to receive much for the settlement to be fair because the class gave up very little." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1123 (9th Cir. 2020).

Settlements that occur before formal class certification "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In reviewing such settlements, in addition to considering the above factors, a court also must ensure that "the settlement is not the product of collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011).

**B. Analysis**

**1. The Settlement Meets the Prerequisites for Certification**

The Court must certify that the settlement class satisfies Rule 23. The Court discussed the Rule 23 analysis in its April 4, 2024 Order in which the Court found that "plaintiffs' motion for an injunctive relief class under Rule 23(b)(2) would be appropriate for purposes of plaintiffs' claims under the UCL and CIPA." (Dkt. No. 690, Order Denying Without Prejudice Plaintiff's Motion for Class Certification ["Cert. Order"] at 14.)

In that prior order, the Court found that plaintiffs needed to "address two unresolved issues: (1) whether the class, as defined, is fail safe and, if so, whether striking "personal information" from the decision would result in an overbroad class; and (2) whether the RTB data produced thus far is representative of the class as a whole." (*Id.* at 2.) The agreed-upon class definition (SA at 2 ¶ 16) provides objective criteria (the activation and use of a Google account) that allows class members to easily determine whether they are included in the class. The Court finds that the evidence shows the definition does not sweep uninjured class members within its scope, because all class members must agree to the same standardized Terms of Service when they activate their Google accounts, and all class members are subject to the same common set of standardized Privacy Policies and disclosures. Finally, the parties have submitted evidence to show that Google's RTB practices apply generally to the class as a whole.

Rule 23(a) requires (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Although defendant is unable to confirm the size of the class because it is unable to determine which U.S. Google accounts are unique to specified individuals, based on public census, market share and other data, as well as confidential metrics shared with

plaintiffs and the mediator in settlement, plaintiffs' expert estimates the class is likely to consist of at least 169 million, and potentially over 200 million, unique individuals. Therefore, the requirement of numerosity is satisfied.

The "class representatives are, like all putative class members, subject to Google's ToS [Terms of Service], its Privacy Policy, and other standardized disclosures" and remain in "active" account status, so typicality is met as well. (Cert. Order at 19.)

"Named plaintiffs and their counsel have already spent years vigorously litigating discovery. Moreover, plaintiffs' counsel has experience in complex and class action litigation, including privacy class actions." (Cert. Order at 19.) Therefore, adequacy is satisfied.

Defendant previously contested the issue of commonality. However, this settlement resolves their objection. Additionally, the record evidence shows that "Google's standardized disclosures are common proof capable of resolving the question" of whether Google promised its U.S. account holders that it would not share or sell their personal information." (*Id.* at 14.)

Rule 23(b)(2) allows for certification of an injunctive relief class where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2). Here, as the Court has already observed, "Google's RTB is universal." (*Id.* at 24.)

Thus, the Court finds that the prerequisites of Rule 23 have been satisfied for the purposes of certification of the Settlement Class.

**2. The Settlement is Fair and Reasonable**

This settlement does not release any class member's right to monetary damages, other than the Class Representatives. Therefore, the standard for approval is merely whether the value of the settlement is not "illusory, and thus [] fair, reasonable, or adequate." Both parties acknowledge that the injunctive relief provided by the settlement constitutes new action by Google to (1) disclose

information to the public about its collection and use of user data[3] and (2) provide users the option to opt out of various types of data collection.

Therefore, the Court finds that the plan is not illusory, does provide some value, and therefore approves the plan as adequate.

**3. Certification is Granted and the Settlement is Approved**

For the reasons discussed above, the Court finds the Settlement Agreement and certification of the Settlement Class as defined therein to be proper.

## III. MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS

### A. Attorneys' Fees

Attorneys' fees and costs may be awarded in a certified class action under Federal Rule of Civil Procedure 23(h). Such fees must be found "fair, reasonable, and adequate" in order to be approved. Fed. R. Civ. P. 23(e); *see Staton v. Boeing Co*., 327 F.3d 938, 963 (9th Cir. 2003). To "avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Id*. at 963. "[T]he members of the class retain an interest in assuring that the fees to be paid class counsel are not unreasonably high," since unreasonably high fees are a likely indicator that the class has obtained less monetary or injunctive relief than they might otherwise. *Id*. at 964.

The Court analyzes an attorneys' fees request based on either the "lodestar" method or a percentage of the total settlement fund made available to the class, including costs, fees, and injunctive relief. *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002). The Ninth Circuit encourages courts to use another method as a cross-check in order to avoid a "mechanical or formulaic approach that results in an unreasonable reward." *In re Bluetooth*, 654 F.3d at 944-45

[3] Plaintiffs highlight that these are "the first consumer-facing disclosures that Google has ever made about its ad auction practices." Dkt. No. 803, Plaintiff's Response to Defendant's Supplemental Brief.

United States District Court
Northern District of California

(citing *Vizcaino*, 290 F.3d at 1050–51.) Under the lodestar approach, a court multiplies the number of hours reasonably expended by the reasonable hourly rate. *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("[A] court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate. A reasonable hourly rate is ordinarily the 'prevailing market rate [] in the relevant community'"). Under the percentage-of-the-fund (or "common fund") method, courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). The benchmark should be adjusted when the percentage recovery would be "either too small or too large in light of the hours devoted to the case or other relevant."

District courts are tasked with determining the amount of fees that is "reasonable," *Hensley*, 461 U.S. at 433, and it is within a court's discretion to reduce an award for attorney fees by up to ten percent without offering a specific explanation for the reduction. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). A court may further reduce an award amount if a movant's supporting documents are inadequate or include hours not "reasonably expended," such as "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 433–34. A full fee award can be "excessive" if a plaintiff has achieved only limited or partial success on their claims. *Id.* at 436. "This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Id.*

Class counsel requests an attorneys' fees award of $128,358,352. Plaintiffs argue this fee is warranted under the percent-of-the-fund method, using their expert's estimate of the value of the settlement.[4] However, as discussed more fully on the record at the settlement hearing, this estimate

---

[4] Plaintiffs' expert Professor Robert Zeithammer values the injunctive relief obtained at a minimum of $1.4 billion, which he derived by multiplying his calculated $36 annual benefit per account holder by the number of account holders who could choose to activate the new RTB control, assuming an opt-in percentage of 8.8 percent. *See* Dkt. No. 788-8, Zeithammer Declaration in Support of the Fees Motion ["Zeithammer Decl."], ¶¶ 34-36. The 8.8 percent opt-in

is too speculative. At the hearing, the Court proposed that plaintiffs' counsel be paid based upon the actual number of class members who make use of the RTB control. This would require counsel to wait to be paid until the Court could identify how successful the injunctive relief is, given the speculative nature of their proffered evidence. They declined. Because plaintiffs' expert provides an estimate that is purely speculative, the Court will use the lodestar method to assess attorneys' fees.

Based on the time records submitted by counsel, the attorneys' fees sought approximately 3.5 its proposed lodestar of $36,673,815.[5] Plaintiffs claim they used hourly rates that are commensurate with their experience and with the legal market in this district.[6]

Defendants have many objections. (Dkt. No. 787.) *First*, they object to various categories of time billed. The Court has conducted a review of plaintiffs' counsel's accounting of their billing and has identified various errors and inefficiencies, including the following.

Regarding category (22), appeal, plaintiffs ask for compensation for their interlocutory appeal of this Court's order denying certification of a Rule 23(b)(3) class, totaling $163,300. Plaintiffs lost their appeal. This category is excluded. Regarding category (18), discovery motions, as discussed at the settlement hearing more fully, plaintiffs brought (and lost) excessive discovery motions, including seven appeals of the Magistrate Judge's discovery rulings, resulting in unnecessary discovery-related fees. Therefore, the Court excludes all but 1000 hours in this category. Regarding category (13), Discovery – Tier I Review, plaintiffs billed at the full associate rate of $325 for review of 8.7 documents per hour, compared to the generally accepted standard of

---

assumption is extrapolated from an estimated number of individuals who have enabled controls that websites make available to users under the California Consumer Privacy Act. The Court agrees with defendant that these controls are not analogous to the RTB Control.

[5] The Court notes that the chart presented by plaintiffs includes a mathematical error. Specifically, Exhibit E to the Declaration of Elizabeth C. Pritzker in support of the Fee Motion lists the number of hours billed by each plaintiff firm, which do not add up to the total listed of 46,521.75. However, because the Court has conducted its own calculations, correction is not needed.

[6] Defendants do not dispute the hourly rates, except as to discovery review, discussed *infra*.

United States District Court
Northern District of California

fifty 10-page documents per hour. Therefore, all but 2,652 hours are excluded in this category. Regarding category (5) Lead Counsel/PEC Meetings, the Court will exclude half of the hours submitted because plaintiffs have violated a Court Order which required (1) all billing to be recorded by task, not block billing and (2) no billing related to fee issues or time spent preparing or reviewing time and expenses. (Dkt. No. 77.) This results in a total lodestar of 36,242.15 hours, or $28,570,247.34.

The Court will provide plaintiffs' counsel seven (7) days from the issuance of this Order to challenge the Court's calculation of the lodestar. Such a challenge must provide reference to specific, detailed attorney billing, which may be submitted for *in camera* review. Any charts must also be sent to the Chambers via email in a CSV or Excel file.

Pursuant to its discretion to reduce an award for attorney fees by up to ten percent without offering a specific explanation for the reduction, the Court reduces the lodestar to $25,713,222.61. Such a reduction is appropriate where inefficiencies were already established and the lack of detailed billings does not allow for a more detailed analysis.

*Second*, defendants argue that the Court should apply a 0.5 (or 50%) multiplier, instead of plaintiffs' requested 3.5 multiplier, because only special circumstances warrant a positive multiplier, whereas here, the settlement falls far short of the sweeping relief, including classwide damages of more than $1 billion, that plaintiffs initially sought.

Plaintiffs counter that they achieved their "litigation goals of choice, transparency, and accountability" via a settlement that will "fundamentally alter Google's business practices". Plaintiffs describe the settlement as "an historic victory for hundreds of millions of Americans," adding that "[i]ndependent press articles describe the settlement as 'transform[ing] digital advertising' and 'Google's most significant privacy concession to date.'"[7] The Court has reviewed press coverage of the settlement and has not found it to be quite as positive as this statement might

---

[7] The full title of this article is "Privacy Concession: How Google's RTB Settlement *Could* Transform Digital Advertising Forever." Darie Nani, SOVEREIGN MAGAZINE (Sept. 8, 2025) (emphasis supplied).

suggest.[8] Indeed, much of the coverage questions the degree to which this injunctive relief will impact Google, given that the RTB control is an opt-in.[9]

The Court finds that the settlement is adequate, but by no means excellent. Therefore, pursuant to its authority to reduce an award if a plaintiff has achieved only limited or partial success on their claims, the Court applies only a 0.85 multiplier to the lodestar. This results in $21,856,239.22.

Based on the foregoing, the Court finds an award of attorneys' fees in the amount of $21,856,239.22 to be fair, reasonable, and adequate.

### B. Costs Award

Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses. Fed. R. Civ. P. 23(h); *see Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (holding that attorneys may recover reasonable expenses that would typically be billed to paying clients in non-contingency matters). Costs compensable under Rule 23(h) include "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, class counsel seeks reimbursement for litigation expenses, and provides records documenting those expenses, in the amount of $3,488,792.96. (Dkt. No. 777.) The Court finds this amount reasonable, fair, and adequate.

### C. Incentive Award

The district court must evaluate named plaintiffs' requested awards using relevant factors including "the actions the plaintiff has taken to protect the interests of the class, the degree to which

---

[8] Moreover, the Court found that the press articles that suggest the settlement will be successful are simply quoting plaintiffs' counsel. *See, e.g.* Luis Espada, *Google's RTB Privacy Settlement: A $21.6 billion gamble that could reshape digital advertising*, (Sept. 7, 2025), available at: https://ppc.land/googles-rtb-privacy-settlement-a-21-6-billion-gamble-that-could-reshape-digital-advertising/.

[9] *See, e.g.,* A. Schiff, *A Programmatic 'Kill Switch'? Why Google's 'RTB Control' Isn't Sparking Panic*, AdExchanger (Nov. 17, 2025) ("the opt-out factor is also a big reason why this proposed mechanism isn't capturing much attention. History has shown that opt-out controls rarely spur widespread action. Most people simply leave things as they are. The inertia of defaults is real."), available at: https://www.adexchanger.com/data-privacy-roundup/a-programmatic-kill-switch-why-googles-rtb-control-isnt-sparking-panic/.

the class has benefitted from those actions . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton*, 327 F.3d at 977. "Such awards are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp*., 563 F.3d 948, 958-959 (9th Cir. 2009). The Ninth Circuit has emphasized that district courts must "scrutiniz[e] all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Here, Class Representatives came forward to represent the interests of millions of others, with very little personally to gain. Class Representatives assisted counsel with the investigation and prosecution of the claims and risked a judgment for attorneys' fees and costs. Because the laws are not self-enforcing, it is appropriate to give incentives to those who come forward with little to gain and at personal risk and who work to achieve a settlement that confers substantial benefits on others.

Thus, the Court approves the requested $15,000 incentive award payment for each of the Class Representatives, Christopher Valencia, John Kevranian, Terry Diggs, Kimberley Woodruff, Rethena Green, Salvatore Toronto, and Tara Williams.

## IV. CONCLUSION

Accordingly, the motion for final approval of class settlement is **GRANTED**. The motion for attorneys' fees, costs, and service awards is **GRANTED IN PART** as follows: Counsel is awarded $21,856,239.22 in attorneys' fees and $3,488,792.96 in litigation costs. Class Representatives are granted incentive awards of $15,000 each.

Without affecting the finality of this order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the settlement for a period of one year.

United States District Court
Northern District of California

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that final judgment is **ENTERED** in accordance with the terms of the settlement and this Order. This document will constitute a final judgment (and the separate document constituting the judgment) for purposes of Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED AND ADJUDGED.**

This terminates Dkt. Nos. 777, 778, 781, 787, 793, 794, & 795.

Date: March 26, 2026

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**